**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Garcia Escobedo, Jr., | No. CV-19-03754-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security's ("Commissioner") denial of Plaintiff's concurrent applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social Security Act ("Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of the decision, and the Court now considers Plaintiff's Opening Brief (Doc. 17, "Pl. Br."), the Commissioner's Response (Doc. 18, "Def. Br."), Plaintiff's Reply (Doc. 21, "Reply"), and the Administrative Record (Doc. 14, "R."). For the following reasons, the Court will affirm the decision.

## I.    BACKGROUND

Plaintiff filed his applications on June 12, 2012, alleging disability as of April 29, 2011.[1] (R. at 255.) The Commissioner denied the applications initially and upon

---

[1] Plaintiff filed a prior application for benefits in June 2009, alleging disability as of January 8, 2009, which another administrative law judge denied on April 28, 2011–the day before Plaintiff's current alleged onset date. (R. at 160–71.) The ALJ here found Plaintiff rebutted the presumption of non-disability, *see Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988), by presenting new and material evidence related to his impairments, including a new diagnosis of multiple sclerosis. (*Id.* at 21.)

1    reconsideration, and a hearing before an administrative law judge ("ALJ") was held. (*Id.*
2    at 255, 86–125 [transcript].) The ALJ issued a decision finding Plaintiff not "disabled."
3    (*Id.* at 255–67.) The Appeals Council vacated the decision and remanded the case to the
4    ALJ. (*Id.* at 276–78.) A rehearing was held, and the ALJ again found Plaintiff not
5    "disabled." (*Id.* at 20–32 [decision], 41–85 [transcript].) The Appeals Council upheld this
6    decision and it became final. (*Id.* at 1–3.)

7         Therein, the ALJ found Plaintiff had "severe"[2] impairments of multiple sclerosis,
8    cervical and lumbar somatic dysfunction, bipolar disorder, and schizophrenia disorder. (*Id.*
9    at 23.) The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

11       [Plaintiff] has the residual functional capacity to perform light to medium
12       work as defined in 20 CFR 404.1567(b)-(c) and 416.967(b)-(c),[3] except he
         has the following additional limitations: he can lift and carry up to 20 pounds
13       continuously, up to 50 pounds frequently, and up to 100 pounds occasionally;
         he can sit for 8 hours in an 8-hour day; he can stand for 4 hours in an 8-hour
14       day; he can walk for 4 hours in an 8-hour day; he can frequently climb stairs
         and ramps; he can occasionally climb ladders and scaffolds; he can
15       continuously balance; he can frequently stoop, kneel, crouch, and crawl; he
         can never work at unprotected heights or around moving mechanical parts;
16       he can frequently operate a motor vehicle; he can tolerate very loud noise
17       levels; he is limited to unskilled work that can be learned in 30 days or less;
         and he would be off task for 9 percent of the day.

20    (*Id.* at 25.) Plaintiff alleges that the ALJ erred in the assessment of his RFC by rejecting
21    various medical opinions, his own testimony, and testimony from his wife.[4] (Pl. Br.)

22    [2] An "impairment or combination of impairments" is "severe" if it "significantly limits [a
23    claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

24    [3] Although this case is governed by both 20 C.F.R. Part 404, which governs Title II claims,
25    and 20 C.F.R. Part 416, which governs Title XVI claims, the Court will only cite to Part
26    404 for brevity, given that the respective regulations are substantively identical.

27    [4] Plaintiff's Opening Brief does not comply with this Court's Scheduling Order (Doc. 6)
      and LRCiv 16.1(d), which proscribe the submission of an opening brief in excess of 25
28    pages. As explained in the Scheduling Order, "the Court may strike the non-complying
      brief, dismiss the case, or remand to the agency, as appropriate." (Doc. 6 at 3.)

## II.     LEGAL STANDARD

The Court only reviews issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. §§ 405(g), 1383(c). The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674–75. "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 675. The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." *Id.* The Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Such is the case if the error is "inconsequential to the ultimate nondisability determination," *id.* at 1122, or "'if the [ALJ's] path may reasonably be discerned,' even if the [ALJ] 'explains [his or her] decision with less than ideal clarity,'" *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Alaska Dep't of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (U.S. 2004)).

The ALJ determines whether a claimant is "disabled" using a five-step sequential evaluation. 20 C.F.R. § 404.1520(a)(4). In brief, the ALJ must determine whether the claimant: (1) is "doing substantial gainful activity"; (2) has a "severe" medically determinable impairment or combination of impairments that has lasted more than 12 months; (3) has an impairment that "meets or equals" an impairment listed in appendix 1

Nevertheless, the Court will consider the brief as submitted in its entirety but cautions that any future violation may result in one of the aforementioned consequences.

of subpart P of 20 C.F.R. § 404; (4) can perform "past relevant work" based on his or her RFC; and (5) "can make an adjustment to other work" based on his or her RFC, age, education, and work experience. *Id.* The claimant bears the burden of proof at steps one through four until it shifts to the ALJ at step five. *Molina*, 674 F.3d at 1110.

## III.   ANALYSIS

### A.   The ALJ Properly Evaluated The Medical Opinions.

Generally, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight.[5] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings." *Id.*

In evaluating any medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. §§ 404.1527(c)(1)–(6); *Trevizo*, 871 F.3d at 675. An ALJ may reject an opinion that is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

---

[5] A treating source's opinion is given "controlling weight" when it is "well-supported" by objective medical evidence and "not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). This is not the case here.

1    **1.    The ALJ did not err in giving "little" weight to the treating**

2    **psychiatrists' opinions.**

3    Plaintiff alleges that the ALJ erred in giving minimal weight to the opinions of

4    treating psychiatrists, Dan Muschevici, M.D., Ph.D., and Dawn Dawson, M.D. (Pl. Br. at

5    9–19; R. at 812–14 [Muschevici opinion], 1738–40 [Dawson opinion].)

6    As noted by the ALJ, they opined "that [Plaintiff's] mental limitations preclude

7    performance for 15 percent or more of an eight-hour workday, that [Plaintiff] is unable to

8    perform work for more than 30 percent of the day, that he would miss five days or more of

9    work each month, and that he is unable to obtain and retain work in a competitive work

10   setting."[6] (R. at 29–30.) In rejecting these opinions, the ALJ found they "overstate

11   [Plaintiff's] mental limitations and lack substantial support from [his] mental health

12   records, which emphasize [his] stable mental states and the efficacy of his routine treatment

13   regimen." (*Id.* at 30.) He also found that "the mental records do not support their claims

14   that [Plaintiff] would be unable to work for more than 30 percent of the day, especially

15   when considering [his] improved mental symptoms and absence of psychiatric

16   hospitalizations." (*Id.*)

17   The Court finds these reasons are specific and legitimate. As an initial matter, the

18   Court notes that the ALJ omits citation to specific records in his analysis of these opinions.

19   (*Id.* at 29–30.) Nevertheless, the Court finds that the substantial evidence requirement is

20   met because the ALJ provided an adequate discussion of the relevant records elsewhere in

21   the decision. (*Id.* at 27 ["Symptom Evaluation"].) Thus, the ALJ's path can "reasonably be

22   discerned." *Treichler*, 775 F.3d at 1099. For the following reasons, the Court finds that the

23   ALJ's reasons for rejecting the opinions, as described above, as well as his findings and

24   interpretations of the relevant evidence in his "Symptom Evaluation," upon which these

25   reasons are predicated, are supported by substantial evidence.

26   Dr. Muschevici treated Plaintiff from October 2012 to June 2014. (*Id.* at 970, 1641.)

27   _____

28   [6] Only Dr. Muschevici believed Plaintiff was "unable to obtain and retain work in a competitive work setting." (R. at 814.) Dr. Dawson did not believe such. (*Id.* at 1740.)

Plaintiff maintains that the ALJ's interpretation of certain treatment records was not a "complete representation the record." (Pl. Br. at 12 (citing R. at 27, 769, 986, 989, 996, 998, 1002).) First, Plaintiff references a January 2013 visit where Dr. Muschevici noted he "was moderate[ly] anxious but able to give information on himself." (R. at 768 (duplicate at 973).) Though Plaintiff reported still hearing "voices" at night, he also reported that he felt "stable 'enough'" on the current therapy and that it was "helping him to feel 'better.'" (*Id.* at 768–69.) Moreover, he denied "command type" hallucinations. (*Id.* at 769.) Dr. Muschevici rated his symptoms as "mild," which he also did at seven out of a total of ten visits with Plaintiff. (*Id.* at 769, 970, 977, 996, 999, 1002, 1642.) He also noted "good" concentration, intellect, insight, and judgment; "intact" memory; "logical" thought process; and "non-psychotic" thought content–*which he did at all ten visits with Plaintiff*. (*Id.* at 768–69, 970, 977, 982, 986, 989, 992, 999, 1002, 1641.)

Plaintiff also references an October 2013 visit where he reported "auditory hallucinations, sometimes daily, sometimes only as a 'noise'" despite therapy. (*Id.* at 985.) Dr. Muschevici rated his symptoms as "borderline." (*Id.* at 986.) He made the same normal findings as before and noted that Plaintiff "denied any cognitive decline." (*Id.*) At the next appointment in December 2013, Dr. Muschevici again rated his symptoms as "borderline" but did not note any reports of hallucinations. (*Id.* at 988–89.) In January 2014, he rated Plaintiff's symptoms as "moderate," noting reports of "visual hallucinations, almost daily, but no auditory hallucinations." (*Id.* at 991–92.) He increased Plaintiff's Abilify. (*Id.*) The next month, Plaintiff reported feeling "better." (*Id* at 995.) Dr. Muschevici noted his symptoms were "mild" and "much improved" and that Plaintiff was "improving psychiatrically." (*Id.* at 999.) In March 2014, he noted Plaintiff's denial of "any psychotic symptoms including perceptual disturbances and delusions." (*Id.* at 1001.) He again noted Plaintiff's symptoms were "mild" and "much improved." (*Id.* at 1002.) In June 2014, however, Plaintiff again reported hearing "voices." (*Id.* at 1641.) Nevertheless, Dr. Muschevici noted his Global Risk Assessment ("GRA") as "low," indicative of "[o]ne stable chronic illness." (*Id.* at 1642.)

1    Dr. Adiza Sulley, M.D., who did not provide an opinion, took over treatment from
2    September 2014 to January 2016. (*Id.* at 1660, 1506.) At literally every visit during this
3    time, Plaintiff denied hallucinations and reported he was "doing okay" or "doing well."
4    (*Id.* at 1660, 1451, 1465, 1478, 1482, 1488, 1497, 1507.) However, Plaintiff disputes the
5    ALJ's interpretation of an August 2015 visit in which Dr. Sulley noted he was compliant
6    with his medications and denied "bothersome side effects." (Pl. Br. at 14 (citing R. at
7    1482).) Plaintiff notes that four days after this visit, his wife "contacted the clinic
8    expressing worry over whether he was taking his medications properly as he had not been
9    sleeping, had been talking to himself and sleep walking." (*Id.* (citing R. at 1486).) She told
10   the clinic that Plaintiff "took off in the car" and that "no one has seen him." (R. at 1486.)
11   However, the clinic called her back and she told them that "everything was fine now" and
12   that "he just went to get fast food for breakfast." (*Id.*) Two days later, she contacted the
13   clinic again, stating that he still was not "doing well" and has been "agitated." (*Id.* at 1487.)
14   The clinic told her that they could come in the next day on a walk-in basis, which they did
15   not. (*Id.*) A little over a week later, Plaintiff presented to the clinic for a 3-month nursing
16   progress check and stated that "he noticed a decline in functional status when he went
17   without his Lorazepam" and that "he was without [it] for almost a week." (*Id.* at 1488.) As
18   noted by the ALJ, he denied adverse side effects from medications as well as any aggressive
19   behaviors, persistent depression, mania or anxiety. (*Id.* at 27 (citing *id.* at 1496).)

20   Dr. Dawson treated Plaintiff from May 2016 and onward. (R. at 1544, 1724.) At the
21   first visit, she noted "good" concentration, judgment, and insight; "age appropriate"
22   memory; "logical and coherent" thought process; and an absence of abnormal/psychotic
23   thoughts. (*Id.* at 1544.) More significantly, she noted an absence of hallucinations. (*Id.* at
24   1544–45) In June 2016, she again noted "good" concentration, judgment, and insight; "age
25   appropriate" memory; and an absence of abnormal/psychotic thoughts, though noted a
26   "tangential" thought process and "anxious" mood. (*Id.* at 1551.) However, she noted
27   Plaintiff's mood was stable and his report that "[t]he Abilify and the Depakote keep me
28   relaxed." (*Id.*) Plaintiff again denied hallucinations. (*Id.*) In September, however, Plaintiff

1   reported that "every once in a while" he saw "shadows," though denied any auditory

2   hallucination. (*Id.* at 1692.) Dr. Dawson noted "fair" concentration, judgment, and insight

3   and "tangential" thought process. (*Id.*) Notations at the next appointment were identical,

4   elaborating that Plaintiff had visual hallucinations of "shadows and a lady" occurring daily.

5   (*Id.* at 1706–07.) Though in less than a month, his visual hallucinations had reportedly

6   "improved." (*Id.* at 1723.)

7          While the Court notes that in the context of mental health "it is error for an ALJ to

8   pick out a few isolated instances of improvement over a period of months or years and to

9   treat them as a basis for concluding a claimant is capable of working," *Garrison*, 759 F.3d

10   at 1017, it finds that no such error occurred here. In fact, Plaintiff, more often than not,

11   experienced relief from his mental symptoms, as noted by the repeated notations of "low"

12   risk, "mild," or "borderline" symptoms; extensive periods of time where he denied

13   hallucinations altogether; and mostly normal findings on examination. Though there were

14   instances of exacerbation of his symptoms, these instances were isolated and neither

15   frequent nor ongoing. Moreover, when Plaintiff did experience hallucinations, they were

16   reportedly "not disturbing." (*Id.* at 27 (citing *id.* at 901).) Dr. Muschevici noted the absence

17   of any "command hallucinations." (*Id.* at 765, 769, 957, 976.) Plaintiff also reported being

18   able to "ignore" hallucinations, suggesting that they did not cause significant disruption.[7]

19   (*Id.* at 949, 1639.) Thus, the ALJ's specific and legitimate reasons for rejecting the treating

20   psychiatrists' opinions are supported by substantial evidence.[8] (*Id.* at 30.)

21          ///

22          ///

23

24   [7] Plaintiff reported that he is able to ignore hallucinations that occur during the day because

25   "he is more busy during the day." (R. at 949.) He also reported that he is able to sleep at night despite hallucinations. (*Id.* at 956.)

26   [8] Plaintiff notes that in concluding his condition was "stable," the ALJ relied on a record

27   that was not a clinical treatment note. (Reply at 3 (citing R. at 880).) However, Plaintiff cites no authority proscribing an ALJ from considering non-clinical evidence in evaluating

28   the severity of a claimant's impairments. Regardless, clinical treatment notes also noted Plaintiff's condition was "stable." (R. at 1451, 1642.)

1

2

   **2.   The ALJ did not err in failing to incorporate certain limitations from the examining psychiatrists' opinions.**

3      Plaintiff alleges that the ALJ erred by "cherry-picking" limitations from the

4   opinions of examining psychologists, Greg Peetoom, Ph.D., and Brent Geary, Ph.D., to

5   which the ALJ had given "partial" weight. (Pl. Br. at 19–20; R. at 29, 748–53 [Peetoom

6   opinion], 790–94 [Geary opinion].) In particular, Plaintiff disputes the lack of credit given

7   to Dr. Geary's opinion that Plaintiff "would need reminders about work details and require

8   redirection to task by supervisors due to distractibility." (Pl. Br. at 19 (citing R. at 794).)

9      The ALJ rejected such a limitation, finding that "the treatment records fail to support

10   a finding of significant and persistent memory, concentration, and cognitive deficits." (R.

11   at 29.) While Plaintiff cites other evidence that purportedly warrants the limitation,

12   substantial evidence supports the ALJ's reason for rejecting it. *See Jamerson v. Chater*,

13   112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial

14   evidence that could support a finding of disability, but whether there is substantial evidence

15   to support the Commissioner's actual finding that claimant is not disabled."). In particular,

16   the ALJ cited records showing that Plaintiff's symptoms were "borderline to mild without

17   cognitive decline." (*Id.* at 27 (citing *id.* at 769, 986, 989, 996, 998, 1002).) The cited records

18   contain clinical findings that Plaintiff had "intact" memory; "logical" thought process;

19   "non-psychotic" thought content; and "good" concentration, intellect, insight, judgment,

20   and fund of knowledge. (*Id.* at 765–69, 970, 974, 977, 982, 986, 989, 996, 999, 1002.)

21   Thus, the ALJ's reason for not incorporating Dr. Geary's limitation is specific, legitimate,

22   and supported by substantial evidence.

23      Additionally, Plaintiff notes that this limitation was present in the ALJ's prior 2014

24   decision and maintains that his failure to include it in the present one is "problematic." (Pl.

25   Br. at 20.) In the prior decision, the ALJ had found that "[Plaintiff's] comprehension is

26   adequate. He is of low intellect and would need reminders about work details. He is

27   distractible and supervisors would have to redirect him to task, and his pace seems rather

28   slow." (*Id.* at 260.) However, the only thing "problematic" was this limitation itself, as

found by the Appeals Council. (*Id.* at 276.) In its order vacating the 2014 decision, the Appeals Council held that the ALJ's mental RFC assessment was "unclear" due to the ALJ's use of "vague" terms ("adequate," "rather slow," and "prolonged") and failure to "define or specify the extent of [Plaintiff's] distractibility and need for supervisor redirection." (*Id.*) Thus, in apparent attempt to remedy the wrong identified by the Appeals Council,  the ALJ, in assessing Plaintiff's mental RFC here, instead found that Plaintiff is "limited to unskilled work that can be learned in 30 days or less" and "would be off task for 9 percent of the day," a finding which is supported by substantial evidence as later discussed. (*Id.* at 25.) Therefore, Plaintiff's assertion is without merit.

### 3. The ALJ did not err in giving "little weight" to the opinion of the treating neurologist.

Next, Plaintiff alleges the ALJ erred in giving minimal weight to the opinions of treating neurologist, Swaraj Singh, M.D. (Pl. Br. at 20–21.)

The ALJ found that while Dr. Singh's opinions "correlate with [Plaintiff's] complaints of weakness and pain associated with his multiple sclerosis, they are not entirely consistent with the treatment records, which demonstrate [his] stable multiple sclerosis condition, full strength, normal gait, and mostly negative diagnostic reports." (R. at 29.) Moreover, the ALJ found that while Dr. Singh had examined Plaintiff, "his opinion did not account for [Plaintiff's] later stable and improved condition." (*Id.*)

The Court finds these reasons specific, legitimate, and supported by substantial evidence. In discussing Plaintiff's multiple sclerosis, the ALJ noted that "diagnostic imaging scans of [his] lumbar and cervical spines were essentially normal apart from signs of a questionable and subtle signal abnormality within the left ventral aspect of the spinal cord at the C1-C2 level" (*Id.* at 28 (citing *id.* at 668, 697, 827, 1663–64)). Additionally, the ALJ noted, "Electrodiagnostic tests of [Plaintiff's] upper extremities were likewise normal." (*Id.* (citing *id.* at 825).) Regarding treatment, the ALJ noted Plaintiff "took medications for muscle spasms and received Betaseron or Copaxone for his multiple sclerosis. (*Id.* (citing *id.* at 779, 784, 833).) He further noted that "[a]lthough [Plaintiff]

complained of back pain, lumbar strain, and right leg spasms, he mostly denied leg weakness, acute loss of bowel or bladder continence, and joint pain, had full strength and a normal gait, showed normal range of motion, displayed intact sensations and reflexes, and had no focal deficits. (*Id.* at 28 (citing *id.* at 649–50, 655–56, 772–73,776, 782, 821, 1328, 1330, 1375–76, 1381, 1666).) Significantly, the ALJ found Plaintiff's multiple sclerosis was stable. (*Id.* (citing *id.* at 1519, 1523, 1662, 1670).) Lastly, the ALJ noted that "[c]ontrary to [Plaintiff's] assertions, his reports of fatigue and malaise were sporadic at best." (*Id.* at 28 (citing *id.* at 717, 720).) Thus, substantial evidence supports the ALJ's reasons for discounting Dr. Singh's opinion.

Plaintiff, however, alleges that the ALJ's interpretation of the evidence is "factually inaccurate." (Pl. Br. at 21.) In support, Plaintiff directs the Court to a record from Dr. Singh noting worsening of his multiple sclerosis with new lesions. (*Id.* (citing R. at 1419).) However, as noted by the ALJ, Dr. Singh's "opinion did not account for [Plaintiff's] later stable and improved condition." (*Id.* at 29.) Specifically, records cited by the ALJ indicate that in August 2016 Dr. David Bliklen noted Plaintiff's multiple sclerosis "remains stable." (*Id.* at 27 (citing *id.* at 1670, 1662).) Dr. Bliklen also noted Plaintiff was a no show for his past two appointments and that "compliance has been an ongoing problem." (*Id.* at 1670.) Thus, the ALJ's interpretation of the evidence was rational and therefore owed deference.

**B.    The ALJ Properly Discounted Plaintiff's Testimony.**

Plaintiff alleges that the ALJ failed to provide clear and convincing reasons for rejecting his testimony. (Pl. Br. at 22–24.)

Absent evidence of malingering, an ALJ may only discount a claimant's subjective allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina*, 674 F.3d at 1112. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully

determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099. An ALJ may consider "inconsistencies either in the claimant's testimony or between the testimony in the claimant's conduct." *Molina*, 674 F.3d at 1112. An ALJ may also consider: "(1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence."[9] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 27.) More specifically, the ALJ noted: (1) inconsistency with clinical and diagnostic findings, (2) reliance on routine and conservative treatment, (3) effectiveness of medications and therapy (without adverse side effects), (4) Plaintiff's reports of relief of symptoms, and (5) Plaintiff's engagement in activities that undermined his allegation of disabling symptoms. (*Id.* (citing evidence).)

The Court finds each is a clear and convincing reason for discounting his statements and testimony. The evidence discussed *supra* pp. 5–11 as well as the evidence cited by the ALJ (*Id.* at 27)[10] constitute substantial evidence that supports these reasons.

---

[9] "Although lack of medical evidence cannot form the sole basis for discounting pain [and symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

[10] Plaintiff disputes the ALJ's reliance on R. at 1619 and 1699. (Pl. Br. at 15.) Plaintiff notes that the former is "not a clinical treatment note." (*Id.*) However, Plaintiff cites no authority proscribing an ALJ from considering non-clinical evidence in evaluating the

1

**C.   The ALJ Properly Rejected Plaintiff's Wife's Testimony.**

2

Plaintiff also alleges that the ALJ improperly rejected testimony from his wife. (Pl.

3

Br. at 22–24; R. at 26–27 [ALJ's summary of testimony].)

4

Nonmedical ("lay witness") sources may offer testimony regarding a claimant's

5

symptoms and functional limitations. 20 C.F.R. § 404.1529(a). Such testimony is

6

"competent evidence" that an ALJ may not disregard unless he gives "reasons germane to

7

each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017)

8

(internal quotations and citation omitted). Where an "ALJ provided clear and convincing

9

reasons for rejecting [a claimant's] own subjective complaints, and [where a lay witness's]

10

testimony was similar to such complaints, it follows that the ALJ also gave germane

11

reasons for rejecting [the lay witness's] testimony." *Valentine v. Comm'r Soc. Sec. Admin.*,

12

574 F.3d 685, 694 (9th Cir. 2009).

13

The ALJ found that Plaintiff's wife's statements were "inconsistent with the

14

objective depiction of [Plaintiff's] physical and mental conditions, which appeared stable

15

and amenable to improvements." (*Id.* at 30.) The ALJ discounted Plaintiff's testimony for

16

similar reasons the Court found clear and convincing; thus, it follows that her testimony

17

was properly discounted as well.

18

**D.   The ALJ Did Not Err In Finding Plaintiff Would Be Off Task 9 Percent**

19

**Of The Workday.**

20

Plaintiff alleges that the ALJ's finding that he would be off task for 9 percent of the

21

day "constitutes harmful error because it is not supported by either treating psychiatrist and

22

allows for sustained employment based on the vocational expert testimony." (Pl. Br. at 22

23

(citing R. at 25, 84).)

24

The ALJ assesses a claimant's RFC based on "all of the relevant medical and other

25

─────────────────

26

severity of a claimant's impairments. Plaintiff alleges that the latter does not actually
establish that he was interested in finding a part-time job. (*Id.*) Indeed, the record merely

27

indicates that the clinic planned to reach out to him to "*see if he is interested* in getting a
part-time job." (R. at 1699 (emphasis added).) However, another record states, "[Plaintiff]

28

reported that he would like to find a job and needed some assistance with the process." (*Id.*
at 1470.) Thus, the ALJ's error was harmless. *See Molina*, 674 F.3d at 1122.

evidence." 20 C.F.R. § 404.1545(a)(3); *see generally* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Moreover, the ALJ need not incorporate limitations from medical opinions that were properly discounted. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Here, the ALJ found that due to Plaintiff's mental symptoms, he would be off task for 9 percent of the day (*i.e.* 43.2 minutes in an 8-hour workday). The Court finds no error. Because the ALJ properly rejected the opinions of Dr. Muschevici and Dr. Dawson, he was under no obligation to incorporate their 15-percent limitation. Given that Plaintiff's symptoms were "borderline to mild without cognitive decline," discussed *supra* pp. 6–8, the ALJ's inclusion of a 9 percent off task limitation is reasonable and reflects a rational interpretation of "all of the relevant medical and other evidence." The Court therefore affirms the ALJ's conclusion.

**IT IS THEREFORE ORDERED affirming** the decision of the Commissioner and directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 15th day of September, 2020.

Honorable John Z. Boyle
United States Magistrate Judge